UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CLARENCE E. SPIVEY,          :
        Petitioner,          :
                         :
    v.          :          CA 12-33 S
                         :
STATE OF RHODE ISLAND, ET AL.,          :
        Respondents.          :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    Before the Court is the State of Rhode Island's Motion to Dismiss "Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (Docket ("Dkt.") #6) ("Motion to Dismiss" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The Court has determined that no hearing is necessary. For the reasons explained below, I recommend that the Motion be granted and that the Petition be dismissed.

**I. Facts and Travel**

    Clarence E. Spivey ("Spivey" or "Petitioner") was convicted on November 2, 1972, of rape, kidnaping, and assault with a dangerous weapon. See Petition under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (Dkt. #1) ("Petition") at 1. He was sentenced for these offenses to a total of fifty-five years

imprisonment.[1]  See id.  Spivey appealed his conviction to the Rhode Island Supreme Court, but it affirmed his conviction on November 22, 1974.  See State v. Spivey, 328 A.2d 414, 415 (R.I. 1974).  He was released on parole in 1986 but returned to prison after violating his parole.[2]  See Spivey v. Wall, 19 A.3d 1234 (R.I. 2011).

On or about January 19, 2012, Spivey filed the instant Petition,[3]  Although Spivey identifies four grounds for relief in

_____

[1] "In addition, in a different case, Spivey received consecutive sentences of 3 years for kidnapping[] and one year for attempted escape, making a total of 59 years to serve."  Petition, Attachment ("Att.") 2 (Amended Pre-Brief of Appellant-Applicant Clarence E. Spivey) at 1; see also id., Att. 3 (Memorandum of Facts ("Spivey's Mem.")) at 1 ("Petitioner was convicted on 11-2-1972 and sentenced on January 8, 1973 and March 12, 1974 to a total of 59 years  ....").

[2] Spivey further explains that he:

was paroled in 1986 to North Carolina and then charged and convicted in that state of breaking and entering and drug charges for which he received a 25 year sentence.  After serving 4 years of that sentence, SPIVEY was returned to Rhode Island as a parole violator in October[] 1991 where he has been incarcerated at the Adult Correctional Institution[s] (ACI) since then.

Petition, Att. 2 at 1.  The State of Rhode Island (the "State") clarifies the above by stating that since October 1991 Spivey "has been continuously under Department of Corrections sentence; and, with the exception of approximately three years between September 10, 1996 and September 20, 1999, when he was physically incarcerated in Massachusetts, he has been physically incarcerated in the Cranston, Rhode Island, Adult Correctional Institutions."  State of Rhode Island's Response to Magistrate Judge's Order to Identify Evidence and/or Supplement Record (Dkt. #17), Att. 1 (Affidavit of Michelle Lanciaux ("Lanciaux Aff.")) ¶ 5.

[3] Spivey has filed several previous habeas petitions in this Court: Spivey v. Wall, CA 07-449 ML; Spivey v. Wall, CA 00-349 L; Spivey v. State of Rhode Island, CA 97-379 ML; Spivey v. Vose, CA 95-561 ML; Spivey v. Vose, CA 94-386 B; and Spivey v. Vose, CA 94-13 L.  However, the instant Petition is concerned only with good time credit and not with his underlying conviction.  Accordingly, the Petition is not barred by the

his Petition,[4] they all relate to a change the Rhode Island Department of Corrections made to the way it awarded credit for "good time." <u>See</u> Petition at 5-6. Spivey claims that as a result of this change he has been deprived of 5,014 days of good time. <u>See</u> Petition, Attachment ("Att.") 3 (Memorandum of Facts ("Spivey's Mem.")) at 2 ("32 years after the petitioner was sentenced, the R.I.D.O.C. illegally removed <u>5014</u> days of good time from the petitioner's 'Books.'").

---

successive petition rule. <u>See</u> <u>Sherrod v. Houston</u>, No. 4:07CV3216, 2009 WL 484360, at *2 (D. Neb. Feb. 23, 2009)("To the degree that the [p]etitioner merely seeks restoration of 'good time' credit, his habeas petition is not barred by the 'successive petition' rule because this is apparently the first federal habeas case directed at that separate legal proceeding."); <u>see also</u> <u>Crouch v. Norris</u>, 251 F.3d 720, 724 (8th Cir. 2001)(concluding that petitioner was not required to seek permission of the Court of Appeals to file a second or successive habeas petition where petitioner sought to challenge the denial of parole in a habeas action even though the petitioner had previously filed a habeas petition attacking the underlying conviction).

[4] As stated in the Petition, the four grounds are:

Ground one: Did the hearing justice err[] in dismissing P.M. 2005-6226 with prejudice pursuant to Rule 12(b)(6) and also upon principles of res judicata? ...

Ground two: Does the R.I.D.O.C.'s retroactive application of the method of calculating good time credits under R.I.G.L. § 42-56-24 (1956)(1969 Reenactment) that was changed after the 1997 decision of <u>Leach v. Vose</u> in Spivey's case violate the ex post facto clause and the equal protection clause? ...

Ground three: Does the R.I. Department of Corrections have the authority to exceed retroactively the 1976 enactment of R.I.G.L. § 13-2-44? ...

Ground four: Did the R.I. Supreme Court incorrectly apply the "Time Allowed for Good Behavior" under R.I.G.L. 1956, as amended by P.L. 1974, Ch. 56 §§ 1, 2? (Note: Mr. Spivey was sentenced under R.I.G.L. 1956 § 13-2-44 <u>Prior</u> to the 1974 change.) ...

Petition at 5-6.

By the instant Motion, the State of Rhode Island (the "State")
seeks dismissal of the Petition on the ground that it is time-
barred.[5]  See State of Rhode Island's Memorandum in Support of Its
Motion to Dismiss "Petition under 28 U.S.C. § 2254 for Writ of
Habeas Corpus by a Person in State Custody" ("State's Mem.") at 2-
3.  The State contends that the "good time" calculation about which
Spivey complains occurred in June of 1997 and that Spivey only had
until June of 1998 in which to challenge, by way of a § 2254 habeas
corpus action, the constitutionality of the Department of
Corrections' "good time" award calculation.  Id. at 2 (citing
attached materials and Barber v. Vose, 682 A.2d 908, 916-17 (R.I.
1996)[6]).  The one-year limitation period to which the State refers

_____

    [5] The State does not definitively assert that the Petition is time-
barred.  Rather, the State offers its belief that the "Petition would
seem to be time-barred."  State of Rhode Island's Memorandum in Support
of Its Motion to Dismiss "Petition under 28 U.S.C. § 2254 for Writ of
Habeas Corpus by a Person in State Custody" ("State's Mem.") at 3.
Despite this somewhat qualified phrasing, it is plain that the State is
seeking to have the Court dismiss the Petition with prejudice on this
basis.

    [6] In Barber v. Vose, 682 A.2d 908 (R.I. 1996), the Rhode Island
Supreme Court held that good behavior or good time credits under R.I.
Gen. Laws § 42-56-24 "do not accrue as a matter of right, but instead,
must be earned and can only be given by the required affirmative action
of the designated department of corrections officials."  Id. at 917.  In
so holding, the court found that "the present department of corrections
policy ... apparently bypasses the required recommendation and consent
features in the statute when awarding so-called up-front credit for
inmate good behavior time."  Id. at 914.  The court admonished that it
was not "legal for those charged with the responsibility of implementing
the statute to subvert its directives by administrative interpretation
because they find it inconvenient or difficult to comply with its
provisions."  Id. at 917.  As a result of the Barber opinion, on June 1,
1997, the Department of Corrections ("D.O.C.") changed the method by
which it calculated "good time."  See Lanciaux Aff. ¶ 6.

4

is found in 28 U.S.C. § 2244(d)(1)(D).[7]  Subsection D provides that
a one-year limitation runs from "the date on which the factual
predicate of the claim or claims presented could have been
discovered through the exercise of due diligence." Id.  The State
contends that the Department of Corrections ("D.O.C.") notified
inmates of the change in the method of calculation by distributing
fliers to the inmate population one to two months prior to the
implementation of the change on June 1, 1997.  State of Rhode
Island's Response to Magistrate Judge's *Order to Identify Evidence
and/or Supplement Record* (Dkt. #17) ("State's Response to Order of
4/12/12"), Att. 1 (Affidavit of Michelle Lanciaux ("Lanciaux

---

[7] 28 U.S.C. § 2244(d) provides in relevant part:

(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in custody
pursuant to the judgment of a State court. The limitation
period shall run from the latest of--

    (A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the
time for seeking such review;

    (B) the date on which the impediment to filing an
application created by State action in violation of the
Constitution or laws of the United States is removed, if
the applicant was prevented from filing by such State
action;

    (C) the date on which the constitutional right asserted
was initially recognized by the Supreme Court, if the
right has been newly recognized by the Supreme Court and
made retroactively applicable to cases on collateral
review; or

    (D) the date on which the factual predicate of the claim
or claims presented could have been discovered through
the exercise of due diligence.

28 U.S.C. § 2244(d).

Aff.")) ¶ 7.

Spivey, however, repeatedly asserts that the action about
which he complains occurred on February 1, 2005. See Petition,
Att. 2 (Amended Pre-Brief of Appellant-Applicant Clarence E.
Spivey) at 1 (contending "that on February 1, 2005, the Rhode
Island Department of Corrections illegally removed 5,014 days of
good time that was awarded him ..."); id., Att. 3 at 3 ("That
recalculation was on February 1, 2005."); id. at 6 ("The R.I.D.O.C.
recalculated his sentence on February 1, 2005 ...."); see also
Motion to Strike (Dkt. #11), Memorandum ("Motion to Strike Mem.")
at 2 ("I did not ascertain that the ACI prison officials had
retroactively applied Rhode Island General Laws Section 42-56-24 to
me until the year of 2005"). He disputes that the Petition is
time-barred. See Objection to State's Motion to Dismiss 28 USC §
2254 (Dkt. #9) ("Objection to Motion to Dismiss") at 3 ("Only when
the Petitioner discovered the illegal actions by the re-calculation
in 2005 (the time the re-calculation took place following the
Petitioner's parole hearing) did the Petitioner begin his State
remedies .... Petitioner's case in State [c]ourt did not become
completed until June of 2011.")(citing Spivey v. Wall, 19 A.3d 1234
(R.I. 2011)).

Because of this factual dispute as to when the action about
which Spivey complains occurred, this Magistrate Judge issued an
order on April 12, 2012, directing the parties to:

1.  identify any evidence in the present record which

6

supports their respective positions regarding when the challenged action occurred and when Spivey, through the exercise of due diligence, could have discovered that it had occurred; and/or

2. supplement the present record with affidavit(s) which supports their respective positions as to when the challenged action occurred and when Spivey, through the exercise of due diligence, could have discovered that it had occurred.

Order to Identify Evidence and/or Supplement Record (Dkt. #15) ("Order of 4/12/12") at 3-4 (citations and footnotes omitted).

In response, Spivey filed an Affidavit (Dkt. #16) ("Spivey Aff.") on April 24, 2012, in which he swears that on July 12, 2005, he "received a prison printout showing the del[e]tion of good time from the petitioner['']s record." Spivey Aff. ¶ 6. Spivey also attached a copy of the printout to his affidavit as well as a copy of an undated affidavit from Frederick Haibon ("Captain Haibon") which was filed in the § 1983 action which Spivey brought in this Court in 2003. See Clarence E. Spivey, Jr. v. Ashbel T. Wall, No. Civ.A. 03-88 T (the "2003 § 1983 Action").

The State's response to the Order of 4/12/12 was received on May 11, 2012. See State's Response to Order of 4/12/12. The response included an affidavit from Michelle Lanciaux, the D.O.C.'s "Agency IT Manager," Lanciaux Aff. ¶ 1, who attests that on June 1, 1997, the D.O.C. changed the method by which it calculated all inmate good behavior and industrial time credits to a month to month basis, in order to conform to the Supreme Court's decision in Barber v. Vose, see id. ¶ 6. Ms. Lanciaux states that

approximately one to two months prior to the D.O.C. implementing this change, "DOC inmates were notified, by flyers distributed to the inmate population, that the Department of Corrections' calculation method for good behavior and industrial credits would be on a month to month basis, in conformance with the Supreme Court of Rhode Island's decisions in <u>Barber</u> and <u>Leach v. Vose</u>, 689 A.2d 393 (R.I. 1997)." <u>Id.</u> ¶ 7.  Ms. Lanciaux further states that, in accordance with the change, "all of Clarence Spivey's sentences were computed on this month to month basis beginning on June 1, 1997." <u>Id.</u> ¶ 8.

On June 4, 2012, Spivey filed a Notice of State Created Impediment (Dkt. #20) ("Notice"), a Motion for Summary Judgment (Dkt. #21), and a Statement of Undisputed Facts (Dkt. #22) ("SUF"). In the Notice, Spivey alleged that he did not receive a copy of the State's response to the Order of 4/12/12 and that the State had intentionally sent a copy to the wrong address.  <u>See</u> Notice ¶ 5. However, Spivey apparently obtained a copy in some manner because on June 7, 2012, he filed a response which addressed the State's Response to Order of 4/12/12.  <u>See</u> Response to Respondent's Answer (Dkt. #23) ("Spivey's Response").

## II. Discussion

### A. Applicability of AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214, became effective on April 24, 1996, <u>see</u> <u>David v. Hall</u>, 318 F.3d 343, 344 (1st Cir. 2003); <u>see also</u> <u>Duncan v. Walker</u>,

8

533 U.S. 167, 170, 121 S.Ct. 2120 (2001), partly to combat increasingly pervasive abuses of the federal courts' habeas jurisdiction, <u>Delaney v. Matesanz</u>, 264 F.3d 7, 10 (1st Cir. 2001) (citing <u>Felker v. Turpin</u>, 518 U.S. 651, 664, 116 S.Ct. 2333 (1996)); <u>Neverson v. Bissonnette</u>, 261 F.3d 120, 124 (1st Cir. 2001) (same). Prior to AEDPA, a prisoner was under no obligation to act promptly in seeking habeas relief. <u>Neverson v. Farquharson</u>, 366 F.3d 32, 44 (1st Cir. 2004). However,

> Congress enacted AEDPA in 1996, amending the procedures governing federal habeas corpus review. Under AEDPA, § 2254 petitions for federal review of state convictions allegedly imposed in violation of the Constitution or federal law are subject to a one-year statute of limitations ....

<u>Currie v. Matesanz</u>, 281 F.3d 261, 264 (1st Cir. 2002). With respect to Spivey's Petition, the one-year period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Spivey argues that this one-year statute of limitations should not apply to him because the AEDPA was enacted years after he was sentenced. <u>See</u> Spivey Aff. ¶ 11. However, the First Circuit rejected this argument in <u>Libby v. Magnusson</u>, 177 F.3d 43 (1st Cir. 1999), and held that application of the AEDPA's requirements to a habeas corpus petition challenging the petitioner's 1987 conviction

did not violate the Ex Post Facto Clause, id. at 46.[8] This holding comports with the decisions of other federal courts which have considered the issue. See Seymour v. Walker, 224 F.3d 542, 560 (6th Cir. 2000)(finding petitioner's claim that district court erred by applying AEDPA to petition challenging her 1990 manslaughter conviction to be "entirely without merit"); Day v. Smith, No. 1:10-CV-00146-REB, 2011 WL 2456715, at *4 (D. Idaho June 14, 2011) ("[B]ecause AEDPA merely limits the circumstances under which inmates may collaterally attack their convictions, it is constitutional and does not violate ex post facto principles."); id. ("Courts addressing this issue uniformly have concluded AEDPA 'neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided a greater punishment, nor changed the proof necessary to convict;' therefore, AEDPA's application to a petition filed after AEDPA's enactment that contains a challenge to a conviction predating AEDPA does not violate the Ex Post Facto Clause.")(quoting Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290 (1977)); Walters v. Howes, No. 4:06-CV-131, 2007 2302330, at *1 (W.D. Mich. Aug. 8, 2007)("Petitioner ... argues that the AEDPA violates the ex post facto clause because it was enacted 11 years after his conviction. This claim has no

_____

[8] The First Circuit's opinion in Libby v. Magnusson, 177 F.3d 43 (1st Cir. 1999), does not indicate the year of Libby's conviction. See id. at 45 ("Over a decade ago, a Maine jury found petitioner-appellant Jeffrey L. Libby guilty of murdering his grandfather ...."). However, the Supreme Judicial Court of Maine's opinion affirming Libby's conviction indicates that he was convicted of the crime in 1987. See State v. Libby, 546 A.2d 444, 446 (Me. 1988).

merit and has consistently been rejected by Federal courts.").
Accordingly, Spivey's argument that AEDPA is not applicable to his
Petition should be rejected. I so recommend.

**B. Timeliness**

**1. The February 1, 2005 Date**

Spivey has not identified any evidence in the record which
supports his claim that "[t]he R.I.D.O.C. recalculated his sentence
on February 1, 2005,"[9] Petition, Att. 3 at 6, and the Court finds

---

[9] It bears noting that Spivey has not been consistent with respect
to when the good time was taken away. At the May 14, 2007, superior
court hearing on his application for post conviction relief, he fixed the
time as a year earlier than reflected in his current filings:

> THE COURT:    But when did they take the good time away from
>               you?
>
> THE DEFENDANT:    They took it February 1st of 2004.
>
> THE COURT:    That's the first time that they took it?
>
> The DEFENDANT:    Yes.
>
> THE COURT:    Then those 8,000 days you referred to --
>
> THE DEFENDANT:    Five thousand fourteen days on February 1st,
>                   2004.
>
> THE COURT:    You went down to 5,000?
>
> THE DEFENDANT:    No, it was 8,496 days. February the 1st of
>                   2004, they deducted 5,014 days, only
>                   credited me 3,482 days. So, somebody just
>                   took 5,014 days away without giving them
>                   back to me.

State's Response to Order of 4/12/12, Att. 3 (Transcript of 5/14/07
Hearing) at 15-16 (citing Case Management/Electronic Case Filing System
("CM/ECF") pagination).

> THE COURT:    I know what your argument is as far as the law
>               is concerned, but did somebody ever explain --
>               and I understand why they went back to the
>               Seventies under that case, but did anyone ever

none.  Accordingly, the Court rejects the unsupported claim that his good time was recalculated on February 1, 2005.

### 2.  Spivey's Awareness

Perhaps in recognition of the fact that there is no evidence to support his claim that his good time was recalculated on February 1, 2005, Spivey has shifted position.  He now appears to argue that because he was incarcerated in Massachusetts for approximately three years (between September 10, 1996, and September 20, 1999) and was not in the ACI when fliers were distributed to inmates notifying them of the change in the way the D.O.C. would calculate good behavior and industrial time credits, see Lanciaux Aff. ¶¶ 5, 8, he was not aware of the change, see Spivey's Response at 2-3, until some unspecified date but not earlier than a date which would result in his Petition being time-barred pursuant to the provision of 28 U.S.C. § 2244(d)(1)(D).

Spivey's contention that he was not aware of the change until 2005, see Motion to Strike Mem. at 2, is undermined by the fact that the complaint he filed in this Court on March 13, 2003, clearly reflects that he possessed this knowledge at that time.

---

explain why the adjustment was made?

THE DEFENDANT:  No.  And in 2004 I asked my classification counselor if I could get a computer printout of my max release date and my good time and she gave me a form stating that my case was checked and revived, I believe, on March 24 of 1997, some 60 days after Leach vs. Vose come out ....

Id. at 18-19.

See 2003 § 1983 Action, Civil Rights Complaint ¶ 9 ("In June of 1997, subject to a Rhode Island State Supreme Court order, the D.O.C. now calculated inmate sentences on a monthly basis only. For instance, inmates would not receive anymore good-time on an upfront basis, but earned, upon work, and good behavior."); id. ¶ 11 ("The D.O.C. has now after Spivey has served over 31 years, now recalculated his sentence, taking away 5,500 days of the 8,496 days that were both awarded and earned ...."); see also id., prayer for relief ¶ 2 (seeking reinstatement of "all his original 8,496 days"). In a memorandum which accompanied his Civil Rights Complaint, Spivey stated: "Recently, upon Spivey's requesting a print-out of future parole dates, and goodtime[,] Spivey learned that the Department of Corrections Record Keeping Department has now readjusted Spivey's sentence ...." 2003 § 1983 Action, Memorandum in Support of Civil Rights Complaint at 2. This memorandum bears a certification signed by Spivey which reflects that a copy was mailed to the defendant Ashbel T. Wall on March 7, 2003. Id. at 12.

Based on the foregoing, I find that Spivey was aware of the factual predicate for the claims alleged in the Petition by at least March 7, 2003. However, he did not file the Petition until January 19, 2012, almost nine years later and well beyond the one-year statute of limitations.

### 3. Statutory Tolling

"The time during which a properly filed application for State

13

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Spivey states that he filed his post conviction relief application (the "Fourth Application")[10] on November 23, 2005. See Petition, Att. 1 (continuation of response to item 11(c)). However, by November 23, 2005, the one-year limitation period had already expired. Accordingly, the Petition is time-barred and should be dismissed for that reason. I so recommend.

To the extent that Spivey may contend that the time between March 7, 2003, and June 29, 2005, should not be counted because he filed a previous application for post-conviction relief on January 7, 2002 (the "Third Application"), which was not withdrawn until June 29, 2005, the Court is not so persuaded. The Third Application concerned the Rhode Island Parole Board, see Petition, Att. 1 (continuation of response to item 11(c)), not the calculation of good time. Indeed, Spivey told the hearing justice at the May 14, 2007, hearing on the Fourth Application that the Third Application "was not on good time, that post conviction was on the Parole Board." State's Response to Order of 4/12/12, Att. C (Transcript of 5/14/07 Hearing) at 15 (citing Case Management/ Electronic Case Filing System ("CM/ECF") pagination). The First

---

[10] Spivey indicates that he filed three prior applications for post-conviction relief. See Petition ¶ 11(c); id. Att. 1 (continuation of response to item 11(c))

Circuit has held that an application for post-conviction relief which "challenges only the proposed date of the petitioner's parole eligibility," Kholi v. Wall, 582 F.3d 147, 151 (1st Cir. 2009), aff'd, Wall v. Kholi, ___ U.S. ___, 131 S.Ct. 1278 (2011), "does not bear a sufficient relationship to the pertinent judgment so as to trigger the tolling provision," id.

Accordingly, I find that Spivey's Third Application similarly does not bear a sufficient relationship to the pertinent claim to trigger the tolling provision of § 2244(d)(2). See id.; see also Croft v. Sec'y, Dep't of Corrections, No. 8:11-cv-58-T-17TGW, 2011 WL 4947455, at *5 (M.D. Fla. Oct. 17, 2011)("To the extent he sought review of the denial of parole, [the petitioner]'s state petition was not an 'application for State post-conviction or other collateral review' with respect to the pertinent judgment for purposes of § 2244(d)(2).").

### 4. Equitable Tolling

The Supreme Court held in Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549 (2010), "that § 2244(d) is subject to equitable tolling in appropriate cases." Id. at 2560. "The Court established a two-prong test: '[A] "petitioner" is "entitled to equitable tolling" only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," and prevented timely filing.'" Drew v. MacEachern, 620 F.3d 16, 23 (1st Cir. 2010)(alteration in original) (quoting Holland, 130 S.Ct. at 2562 (quoting Pace v. DiGuglielmo,

544 U.S. 408, 418, 125 S.Ct. 1807 (2005))).

>        In reference to the first prong, the Court stated
> that "[t]he diligence required for equitable tolling
> purposes is reasonable diligence, not maximum feasible
> diligence."   [Holland, 130 S.Ct.] at 2565 (internal
> quotation marks omitted).  In reference to the second
> prong, the Court explained that "'a garden variety claim
> of excusable neglect,' such as a simple 'miscalculation'
> that leads a lawyer to miss a filing deadline, does not
> warrant equitable tolling."  Id. at 2564 (quoting Irwin
> v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct.
> 453 ... (1990)[,] and Lawrence v. Florida, 549 U.S. 327,
> 336, 127 S.Ct. 1079 ... (2007)).

Drew, 620 F.3d at 23 (first alteration in original).

"[E]quitable tolling should be invoked only sparingly."

Ramos-Martínez v. United States, 638 F.3d 315, 322 (1st Cir. 2011)

(internal quotation marks omitted).  The First Circuit has

"recognized that equitable tolling is available only in cases in

which 'circumstances beyond the litigant's control prevented [her]

from promptly filing.'"  Id. (alteration in original)(quoting

Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005)).

Here, Spivey fails to satisfy the two prongs for equitable

tolling.  First, he was not reasonably diligent in pursuing his

rights for state post-conviction relief from March 7, 2003 (the

date by which at the latest he was aware of his good time credit

claim), to November 23, 2005 (the date on which he filed the Fourth

Application raising that claim).  Spivey knew from the April 1,

2003, Report and Recommendation in the 2003 § 1983 Action that to

the extent he was seeking a restoration of his good time credit,

"[h]is sole federal remedy lies in a writ of habeas corpus."

16

Spivey v. Wall, 2003 WL 21011239, at *1. Despite this advisement, he did nothing to bring his good time claim before the state courts for more than two and a half years.

Second, even if Spivey had diligently pursued his rights, he has not alleged any extraordinary circumstance that would have prevented him from timely filing the Fourth Application. See Drew, 620 F.3d at 24. To the extent that Spivey may contend that the pendency of the Third Application was an impediment to the filing of the Fourth Application, the Court does not find that such pendency constitutes an extraordinary circumstance. Spivey could have moved to amend the Third Petition to add his loss of good time claim. He did not do so. In sum, there is nothing in the record which would indicate that circumstances beyond Spivey's control prevented him from amending his Third Application to add the instant claim or filing his Fourth Application earlier, thereby tolling the statute of limitations. Cf. Hutchinson v. Florida, ___ F.3d ___, 2012 WL 1345599, at *2 (11th Cir. Apr. 19, 2012)("A petitioner has the burden of establishing his right——if 'right' is not too strong a word in the area of equity——to equitable tolling.").

Accordingly, I find that there is no basis for equitable tolling of the one-year limitation period which expired at the latest on March 6, 2004. Accordingly, as the Petition is time-barred, it should be dismissed, and I so recommend.

## C.  Spivey's Substantive Arguments

Even if Spivey's Petition were not time-barred, he is still not entitled to relief as his arguments lack merit under the applicable law.

### 1.  Standard of Review

The applicable standard for this Court to consider claims asserted in a state prisoner's § 2254 petition is set forth in the AEDPA.  See Rashad v. Walsh, 300 F.3d 27, 30 (1st Cir. 2002)(noting that where "underlying case involves a state prisoner's attempt to secure a writ of habeas corpus, our task proceeds under the deferential standard of review mandated by the [AEDPA]").  The AEDPA significantly limits the scope of federal habeas review.  See Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843 (2002)(explaining that the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law"); Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495 (2000)("In sum, [28 U.S.C.] § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."); Sanna v. Dipaolo, 265 F.3d 1, 15 (1st Cir. 2001)("The parameters for granting habeas relief historically have been quite narrow, and the AEDPA standard of review circumscribed those parameters even further.").  Under 28 U.S.C. § 2254(d), the writ

may not be granted unless the state court's adjudication of the claim:

> (1) resulted in a decision that was **contrary to**, or involved an **unreasonable application of**, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(bold added); see also Rashad, 300 F.3d at 34 (stating that a federal court may grant habeas relief for a state prisoner only if the state court proceeding falls within the parameters of either subsection). The Supreme Court has emphasized that: "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011)(internal citation omitted).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. See Bell v. Cone, 535 U.S. at 694; Williams v. Taylor, 529 U.S. at 404-05. "[A] state court decision is considered contrary to Supreme Court precedent only if it either applies a test that is inconsistent with one announced by the Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d at 34-35 (citing Williams v. Taylor, 529 U.S. at 405-06). The "unreasonable application" clause affords relief to a state prisoner "if the

state court applies the correct legal standard in an objectively unreasonable manner, unreasonably extends a Supreme Court precedent to an inappropriate context, or fails to extend such a precedent to an appropriate context." Id. at 35 (citing Williams v. Taylor, 529 U.S. at 407-08). In deciding whether a state court decision fits within the scope of this second clause, a federal court evaluates "the strength of the state court's ultimate conclusion, rather than its announced rationale ...." Id. (citing Ouber v. Guarino, 293 F.3d 19, 34 (1st Cir. 2002)). "Importantly, the test does not demand infallibility: a state court's decision may be objectively reasonable even if the federal habeas court, exercising its independent judgment, would have reached a different conclusion." Id. (citing Williams v. Taylor, 529 U.S. at 411; Williams v. Matesanz, 230 F.3d 421, 425 (1st Cir. 2000)). It is not enough that the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411; accord Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004)("To be an unreasonable application of governing law, the state court's determination must not only be incorrect but also be objectively unreasonable.")(citing Williams); McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)(same). The Court's focus "is not how well reasoned the state court decision is, but whether the outcome is reasonable." Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir. 2001).

The determination of whether the state court decision in question passes this test "must be decided primarily on the basis of Supreme Court holdings that were clearly established at the time of the state court proceedings." Rashad v. Walsh, 300 F.3d at 35 (citing Williams v. Taylor, 529 U.S. at 412). Nevertheless, cases from lower federal courts which are factually similar "may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." Id. (citing Ouber v. Guarino, 293 F.3d at 26; O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)).

The AEDPA also permits relief from a state court judgment if that judgment is based on an unreasonable determination of the facts. See id. (citing 28 U.S.C. § 2254(d)(2)). However, "the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Id. (quoting Ouber v. Guarino, 293 F.3d at 27; see also Sanna v. Dipaolo, 265 F.3d at 7 (stating that the standard applies only to the determination of "basic, primary, or historical facts")). Thus, the petitioner's burden in this regard is "heavy," Rashad v. Walsh, 300 F.3d at 35, and if he fails to carry it "a federal habeas court must credit the state court's findings of fact—and that remains true when those findings are made by a state appellate court as well as when they are made by a state trial court," id. (citing King v. Bowersox, 291 F.3d 539, 540 (8th Cir. 2002); Everett v. Beard, 290 F.3d 500, 507 (3rd Cir. 2002)).

## 2. State Law Matters

Grounds One, Three, and Four of the Petition, all of which raise errors of state law,[11] are not a cognizable basis for habeas relief. See Wilson v. Corcoran, ___ U.S. ___, 131 S.Ct. 13, 16 (2010)("[W]e have repeatedly held that federal habeas corpus relief does not lie for errors of state law.")(internal quotation marks omitted)(citing Estelle v. McQuire, 502 U.S. 62, 67, 112 S.Ct. 475 (1991); Lewis v. Jeffers, 497 U.S. 764, 110 S.Ct. 3092 (1990)); Cruz v. Maloney, 152 Fed. Appx. 1, 3 (1st Cir. 2005)("Errors of state law are not a cognizable basis for federal habeas relief, and this court does not re-examine [the state supreme court]'s determination of a state-law question."); Petrillo v. O'Neill, 428 F.3d 41, 44 (1st Cir. 2005)("'[F]ederal habeas corpus relief does not lie for errors of state law.' ... In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")(alterations in original)(quoting Lewis v. Jeffers, 497 U.S. at 780); see also In re Kersey, 402 F.3d 217, 219 (1st Cir. 2005)("[The respondent] is asking us to conclude, in essence, that the state court misapplied state law. It is not within the province of a federal court to render such a judgment."). Accordingly, Petitioner is not entitled to relief with respect to his state law claims.

---

[11] See n.4 (listing grounds for Petition).

### 3. Ex Post Facto Claim

In Ground Two, Spivey alleges a violation of the Ex Post Facto Clause of the United States Constitution. <u>See</u> Petition at 5. The Ex Post Facto Clause bars a retroactive enactment that increases the punishment for a crime after it has been committed. <u>Waddell v. Dep't of Corrections</u>, ___ F.3d ___, 2012 WL 1890394, at *10 (4th Cir. 2012)(citing <u>Garner v. Jones</u>, 529 U.S. 244, 249, 120 S.Ct. 1362 (2000)). Spivey contends that when he was sentenced in 1974 he was immediately awarded 8,496 days of good time by the D.O.C. pursuant to R.I. Gen. Laws § 13-2-44,[12] <u>see</u> Spivey Aff. ¶ 4, and

---

[12] R.I. Gen. Laws § 13-2-44 provided:

The warden shall keep a record of the conduct of each prisoner, and for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not under sentence to imprisonment for life appears by such record to have faithfully observed all the rules and requirements of the institutions and not to have been subjected to discipline, there shall, with the consent of the director of the department of corrections, upon recommendation to him by the warden, be deducted from the term or terms of sentence of such prisoner the same number of days that there are years in the said term of his sentence; provided that when the sentence is for a longer term than ten (10) years, only ten (10) days shall be deducted for one (1) month's good behavior; and provided, further, that in the case of sentences of at least six (6) months and less than one (1) year, one (1) day per month shall be so deducted; and provided, further, that for purposes of computing the number of days to be deducted for good behavior, consecutive sentences shall be counted as a whole sentence; and, provided, further, that for every day a prisoner shall be shut up or otherwise disciplined for bad conduct, as determined by the warden, there shall be deducted one (1) day from the time he shall have gained for good conduct; and provided, further, that the warden shall have the power in his sole discretion to restore such lost good conduct time in whole or in part upon a showing by the prisoner of subsequent good behavior and disposition to reform; and provided, further, for each month that a prisoner who has been sentenced to imprisonment for six (6) months or more and not

that as a result of the 1997 change in the method of awarding good
time he lost more than 5,000 days, <u>see</u> Spivey's Mem. at 2.  He
argues that the loss of this good time is, in effect, a greater
punishment which has been imposed retroactively and that this
violates the Ex Post Facto Clause.

The Rhode Island Supreme Court rejected Spivey's ex post facto
claim by quoting its earlier holding in <u>Leach v. Vose</u> "that 'the ex
post facto clause is not implicated when the department changes its
procedures to conform to the mandates of the statute,'" <u>Spivey</u>, 19
A.3d at 1235 (quoting <u>Leach</u>, 689 A.2d at 397), and "that 'the ex
post facto clause does not give a prisoner a vested right to a
favorable, but erroneous, interpretation of the law,'" <u>id.</u> (quoting
<u>Leach</u>, 689 A.2d at 397 (quoting <u>Lerner v. Gill</u>, 751 F.2d 450, 457
(1st Cir. 1985))).  This Court is unable to find that the Rhode
Island Supreme Court's rejection of Spivey's ex post facto claim is
"contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the

_____

under sentence to imprisonment for life who has faithfully
engaged in institutional industries there shall, with the
consent of the said director, upon recommendations to him of
the warden, be deducted from the term or terms of sentence of
such prisoner an additional two (2) days a month.  Said two
(2) days a month shall be deducted regardless of the length of
the sentence of said prisoner.

R.I. Gen. Laws § 13-2-44, <u>amended by</u> P.L. 1974, ch. 56.

Section 2 of P.L. 1974, ch. 56 provided for the application of this
section to inmates sentenced between July 1,1972, and May 1, 1974.  <u>See</u>
R.I. Gen. Laws, 1975 Pocket Supplements 1-4A, § 13-2-44, Compiler's Note.
Spivey states that he was sentenced on January 8, 1973, and March 12,
1974.  <u>See</u> Spivey's Mem. at 1.

United States[.]" 28 U.S.C. § 2254(d). To the contrary, the
rejection comports with federal law. See Stephens v. Thomas, 19
F.3d 498, 501 (10th Cir. 1994)(finding no ex post facto violation
when department of corrections fixed erroneous internal practices
relating to good time credits, even though it disadvantaged certain
prisoners); see also Warren v. Baskerville, 233 F.3d 204, 207 (4th
Cir. 2000)("A change in an administrative policy that was in effect
at the time of a criminal's underlying offenses does not run afoul
of the prohibition against ex post facto laws.").

Moreover, the Rhode Island Supreme Court has determined that
R.I. Gen. Laws § 13-2-44, the statute on which Spivey relies,[13] did
not "provide[] for automatic allowance of good behavior credits or
by so-called up-front allowance of good behavior sentence credit
reduction." Barber, 682 A.2d at 913. This Court is bound by this
interpretation. See Hamm v. Latessa, 72 F.3d 947, 954 (1st Cir.
1995)("Federal courts 'are bound by a State's interpretation of its
own statute.'")(quoting Garner v. Louisiana, 368 U.S. 157, 166, 82
S.Ct. 248 (1961)). Therefore, because Spivey was never entitled to
have 8,496 days of good time awarded to him in advance, the
D.O.C.'s correction of this error in 1997 does not violate the Ex
Post Facto Clause. See Stephens, 19 F.3d at 501; see also

_____

[13] Spivey argues that his "good time has undisputably been taken by
the state in an illegal manner, by applying a good time statute (RIGL §
42-56-24) that never should have been applied, because the only good-time
statute in effect at the time of the petitioner's crime[] and sentencing
was RIGL § 13-2-44." Statement of Undisputed Facts (Dkt. #22) ("SUF")
at 2.

Littlefield v. Caton, 856 F.2d 344, 346 (1st 1988)("*Ex post facto* clause does not give inmate 'a vested right in ... an erroneous interpretation' of statute affecting parole eligibility.") (alteration in original); Caballery v. U.S. Parole Commission, 673 F.2d 43, 47 (2nd Cir. 1982)("[A]n agency misinterpretation of a statute cannot support an ex post facto claim. ... 'The ex post facto clause of the Constitution does not give (appellant) a vested right in such an erroneous interpretation.'")(quoting Mileham v. Simmons, 588 F.2d 1279, 1280 (9th Cir. 1979)). Accordingly, Spivey's ex post facto claim should be rejected. I so recommend.

### 4. Equal Protection Claim

In Ground Two Spivey also asserts an equal protection claim. He alleges that the D.O.C. only recalculated Spivey's good time "out of the class of inmates who were sentenced under the good time statute 13-2-44 from May 6, 1960 through December 31, 1976." Petition, Att. 2 at 7. The Rhode Island Supreme Court declined to address Spivey's equal protection claim, indicating that as "in Barber ... the law had 'long since been determined contrary to his contention[.]'" Spivey, 19 A.3d at 1235 (second alteration in original)(quoting Barber, 682 A.2d at 910 (citing Mastracchio v. Superior Court, 200 A.2d 10, 11 (R.I. 1964))).[14] As the state

---

[14] In Mastracchio, the Rhode Island Supreme Court held that "[s]o long as the good behavior credits of the class of those sentenced prior to May 6, 1960 are computed in a like manner and the members of the class are offered identical treatment, there is no denial to petitioner of the equal protection of the laws, even though persons sentenced subsequent to May 6, 1960 may be treated differently." Mastracchio, 200 A.2d at 11.

supreme court declined to pass upon Spivey's equal protection claim, this Court undertakes its own review of that claim.

Even assuming (as Spivey claims) that the D.O.C. only recalculated Spivey's good time out of the class of inmates who were sentenced under § 13-2-44 from May 6, 1960 through December 31, 1976, his equal protection claim cannot succeed because it is based on the D.O.C.'s erroneous practice of applying (prior to Barber) up-front credit for good behavior. See Spivey Aff. ¶ 4 (asserting that "[o]n 3/12/1974 the petitioner was awarded 8496 good time days on the totality of his 59 year[] sentence, pursuant to R.I.G.L. § 13-2-44"); see also Barber, 682 A.2d at 913 ("At no time since 1872 has the statute ever provided for automatic allowance of good behavior credits or by so-called up-front allowance of good behavior sentence credit reduction."); id. at 917 (cautioning that it is not "legal for those charged with the responsibility of implementing the statute to subvert its directives by administrative interpretation").

An equal protection claim cannot be grounded on the D.O.C.'s erroneous interpretation of state law. See Chan v. Reno, 113 F.3d 1068, 1074 (9th Cir. 1997)("Plaintiffs cannot raise an equal protection argument grounded on the [Board of Immigration Appeals'] erroneous interpretation of the law."); Tyler v. United States, 929 F.2d 451, 457 (9th Cir. 1991)("We cannot seriously entertain an argument that an erroneous statutory interpretation should be perpetuated simply because it would favor a prisoner who has not

27

yet benefitted from it.  The argument is not one for equal protection *of the laws*."); <u>Seven Star, Inc. v. United States</u>, 873 F.2d 225, 227 (9th Cir. 1989)("equal protection principles should not provide any basis for holding that an erroneous application of the law in an earlier case must be repeated in a later one."); <u>Mohammad v. Angelone</u>, No. Civ.A. 3:01CV819, 2002 WL 32362131, at *2-3 (E.D. Va. May 22, 2002)(rejecting state prisoner's equal protection claim which at core was "that he is entitled to the same benefit that was improperly conferred upon his codefendants" relative to parole eligibility); <u>Lustgarden v. Gunter</u>, 779 F.Supp. 500, 507 (D. Col. 1991)("Although the earlier group of prisoners received a windfall due to the Board's erroneous interpretation, the state is not required to perpetuate its error."); <u>see also</u> <u>Cummings v. Sirmons</u>, 506 F.3d 1211, 1237 (10th Cir. 2007)(rejecting prisoner's equal protection claim that he was treated differently than other similarly situated Oklahoma criminal defendants and noting absence of any authority "that a state court's erroneous application of state criminal law can result in a violation of a criminal defendant's equal protection rights").

The Rhode Island Supreme Court's determination that the D.O.C. misapplied Rhode Island's good time statute, including § 13-2-44, when D.O.C. allowed up-front credit for good behavior, <u>see</u> <u>Barber</u>, 682 A.2d at 913-14, is conclusive on this Court, <u>see</u> <u>Hamm</u>, 72 F.3d at 954.  Because Spivey's equal protection claim is based on an erroneous credit of good time, the claim should be rejected.  I so

recommend.

## III.  Summary

There is no evidence in the record which supports Spivey's claim that the loss of good time about which he complains occurred on February 1, 2005.  To the contrary, Spivey has been aware of the factual predicate underlying his claim since March 7, 2003, at the latest.  The one-year statute of limitations within which to bring a habeas corpus petition pursuant to 28 U.S.C § 2254 expired one year later on March 6, 2004.  The statute was not tolled pursuant to 28 U.S.C. § 2244(d)(2) by any properly filed application for state post-conviction relief regarding his loss of good time claim, and Spivey is also not entitled to any equitable tolling of the limitations period.  Accordingly, the Petition is time-barred and should be dismissed for that reason.

Even if the Petition were not time-barred, Spivey is not entitled to relief.  The state supreme court's rejection of his ex post facto argument was not contrary to clearly established federal law.  In addition, the state supreme court has determined that R.I. Gen. Laws § 13-2-44, the statute on which Spivey relies for his ex post facto claim, never provided for the award of good time credits in advance, and this Court must accept that court's interpretation of state law.  With respect to his equal protection claim, even assuming he has been treated differently than similarly situated criminal defendants who were sentenced under § 13-2-44, a denial of an equal protection claim cannot be based on an erroneous

29

interpretation of state law.  Accordingly, both Spivey's ex post facto and equal protection claims fail.

## IV.  Conclusion

For the reasons explained above, I recommend that the Motion be granted and that the Petition be dismissed.  Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Crim. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 29, 2012